The Chancellor.
The master, under an interlocutory-decree, having taken the accounts between the parties which are called for by the bill, the right to have which no question was raised, the cause has been set down for final hearing upon the equity reserved.
James Current, by his will, first directs his debts and funeral charges to be paid. He then disposes of all his estate, real and personal, except what may he required for the purposes aforesaid, as follows: He gives to his wife, during her natural life, certain real estate, which is described by metes and bounds. He also gives her certain specific personal property, and declares the same to be in lien of dower. He devises to his two sons, Abram and James, the real estate devised to his wife, after her decease, subject to the payment of two thousand dollars, in ten equal annual payments, from the time they should come into possession, which sum of two thousand dollars he declares shall constitute a part of his residuary estate. He makes a specific devise of land to his daughter Lucy. He gives to his granddaughter two thousand dollars.
The testator then directs as follows: “I do hereby will and direct my executor, herein after named, to sell at public auction, or otherwise, as to him shall seem best, and for such prices as he shall judge expedient, all the rest and residue of my land and real estate and personal *188 property, whatsoever and wheresoever situate, and the moneys arising from such sales,' with what may be due me at my decease (over paying my debts and personal expenses) and including the two thousand dollars charged on the real estate herein before devised to Abram and James, and the value of the land bequeathed to Lucy, to be disposed of as follows.” The testator then names his four sons and four daughters, who had not before been provided for in his will, and gives to each of them the one eighth part of the residuary fund thus in the hands of his executor.
The testator died on the 27th day of July, 1849. His son George, one of the defendants, was, at his father’s death, in possession of the homestead farm, which constituted all the land which the executor afterwards sold under the fifth clause of the will, and for the purposes there mentioned. George continued in possession until the first of April, 1751, -when he delivered it to the purchaser, to whom it had been sold by the executor.
The question is — who is entitled to the rents and profits of the land from the testator’s death to the 1st of April, 1851, at which time the sale by the executor was consummated ?
In the case of Herbert v. Executor of Tuthill et al., Sax. 141, the testator, after giving some ' specific bequests, orders “ that all the rest of his estate, real and personal, should be sold by his executors, and turned into money as' soon after his decease as conveniently might be, and distributed among his children, in certain modes and proportions therein specified,” and the Chanceltor held that the heirs were entitled to the rents and profits between the death of the testator and sale of the land.
In Bradshaw v. Ellis, 2 Dev. & Bat. Ch. Rep. 20, it was determined, where a will' merely empowers the executor to sell the real estate, it descends to the heir in the mean time, and the rents and profits for that period go to him.
These cases would seem to cover the whole ground; *189 and yet, as it is the intention of the testator that is to control, a very slight variation in a will sometimes makes a case which seems to be an authority not as applicable as a first impression regards it.
In relying upon authorities, it is important to consider whether the points which they are relied upon to sustain were necessarily involved in the case — whether they were of greater or less importance to the issues in question, or sufficiently prominent in the case to command the particular attention of the court. In the case from Saxton, if we may rely upon the reporter’s state of the case, the question — whether the rents and profits went to the heirs between the death of the testator and the sale of the land — was of no moment, because the heirs at law and the residuary legatees wore the same individuals, and in any event took the rents and profits. The Chancellor disposes of the questions in a few words, and in a manner which shows that it had commanded but little of his attention. He says, “ there is no doubt, between the death of the testator and the sale of the land, the beneficial interest was in the heirs.” The very question is — whether the beneficial interest is in the heirs ? If it is, it ends the matter, for whoever is entitled to the beneficial interest of the land during the intermediate period in question must necessarily be entitled to the rents and profits. But who is entitled to those rents and profits, is a question which must depend upon the intention of the testator. The heir at law is not entitled to the beneficial interest simply because the title is in him. He has the beneficial interest because the title is in him, and the rents and profits of the land have not, during the period in which the title remains in him, been disposed of. In the case of Bradshaw v. Ellis, it is said the real estate is in the heir in the mean time, and the rents and profits for that period go to him. There certainly is no inflexible rule of law which gives the rents and profits to the individual in whom the title is vested. The intention of the testator must control the disposition *190 of the rents and profits; and if they belong to tbe person who bas tbe title, it is because tbe intention of tbe testator to tbe contrary is not express or implied. Tbe testator might have given tbe title to whom be pleased, or leave it, as be did in this case, to descend to bis heirs at law, and yet have disposed of tbe rents and profits in tbe mean time at bis pleasure. Tbe question — as to who is entitled to tbe rents and profits — does not depend upon who bas tbe title, but to whom bas tbe testator, by express terms or by implication, given those rents and profits ? It is true the simple inquiry — who is tbe heir ? does sometimes determine who is entitled to tbe rents, because if tbe testator, by express terms or by implication, bas not disposed of tbe rents and profits during tbe period that tbe title is by descent cast upon tbe heir, be being entitled to tbe land, is necessarily entitled to tbe rents and profits, for no one can claim tbe land, or its issues, as against tbe heir, except through tbe will of tbe testator; and if be cannot trace tbe right through tbe will, it does not exist.
Who was entitled to the beneficial interest in this land from tbe death of tbe testator until it was sold by tbe executor ? Undoubtedly tbe title was in tbe heirs at law of tbe testator, and that title carries with it tbe beneficial interest, unless the testator bas, by bis will, given it to some one else.
Tbe fact of tbe legal estate remaining in tbe heir, does not control tbe intention of the testator, as to tbe disposition of tbe rents and profits, until tbe estate vests or tbe trust is executed, when there are circumstances showing a different intention. It was said, in Hopkins v. Hopkins, Talbot’s Cases 44, that they are thrown upon tbe heir by tbe law, for want of some other person to take. Lord Talbot says, “ in these cases tbe heir does not take by reason of the testator’s intent beiug one way or tbe other, but tbe law throws it upon him: and wherever tbe testator bas not disposed (be bis intent that the heir should *191 take or not take) yet still lie shall take — ‘for somebody must take — -and none being appointed by the testator, the law throws it upon the heir.” But as was said by the Chancellor, in Rogers v. Rose, 4 J. C. R. 401, the case of Bullock v. Stones, 2 Ves. 521, shows that the testator may, by implication as well as by express words, substitute a person to take the intermediate profits of a real estate descending to the heir pending the contingency of an executory devise. If in the case of an executory devise, with the same propriety may it be done by implication in the case of an executory trust.
In the case of Bullock v. Stones, the testator devised all his real and personal estate in trust, and after debts and legacies paid, then to the first son of A. (who was his heir at law and under age, and had no child,) when he should attain twenty-one years, and with a direction for his proper maintenance and education. The court decreed the rents belonged to the eldest son of A. from his birth. The rents and profits were not expressly disposed of, but their disposition was controlled by the circumstance that the son was to be properly maintained and educated.
In Rogers et al. v. Ross, 4 J. C. R. 388, A. H., the father of AY. H., by his will directed his debts to be paid, and after giving certain legacies, devised all the residue of his estate, both real and personal, to his son, AY. II., when he should arrive at the age of twenty-three years. The question was, who was entitled to the rents and profits until AY. H. attained the age of twenty-three years. AY. H. was not the heir at law, it having been shown that he was illegitimate. The Chancellor decided that A. II. was entitled to the rents and profits by the intention of the testator. Here the legal estate was not disposed of during the intermediate period between the death of the testator and the time when the estate vested; nor were the rents and profits disposed of in express terms. The court decreed the rents to AY. H., because such appeared to be the intention of the testator for the whole will. The person who *192 had the estate in the mean time was declared trustee, and, as such, was decreed to account.
It is evident, from the whole tenor of this will, that the testator did not intend to die intestate as to any portion of his estate. He did not intend to die intestate'as to the rents and profits of his real estate, which he directed to be sold. He provided for all his children. He had six sons and four daughters. He provided for his wife and one or two grandchildren. He made specific devises of real estate to two of his sons, Abram and James, and then he disposes of all the residue of his estate, which was made up of two thousand dollars, which Abram and James were to contribute to the residuary fund, being a charge upon the land devised to them and the homestead farm on which the testator died. He directed his executor to sell this residuary estate, and the proceeds to divide among eight of his children. How, it was the intention of the testator that his eight children should have the beneficial interest in the residuary estate from the time of his death. That intention is to be implied — first, from the manner in which he has distributed his whole property among his wife and children; and secondly, from the character of' the residuary estate. It included real and personal estate. He ordered it to be sold, and the proceeds divided among his eight children. Yet he did not mean that his personal property should be sold, and that until then his children should not have the benefit of it. Some of it was in money, and the rest of it of a character that it could not be sold. The testator meant his eight children should have the immediate benefit of it at his death, and he meant the same as to the real estate included in the residuary clause.
Hpon general principles of equity, the residuary legatees had an equitable interest in the land itself. In equity these legatees were the owners; and although the title was in the heirs, they were but trustees holding the title for the benefit of the trust created by the will. The lega *193 tees had a right to enter upon the land, and take the land itself instead of the proceeds, or they might declare their election to do this in a less formal manner than that of entry upon the possession. Pearson v. Lane, 17 Ves. 100; Crabtree v. Bramble, 3 Atk. 680; Wheldale v. Partridge, 5 Ves. 396. Equity considering that as done which ought to have been done, it is well established that land articled, and devised to be sold and turned into money, is reputed as money, and money articled, or bequeathed to be invested in land is, in equity, clothed with many of the qualities of real estate. 1 Jarman on Wills 473; 2 Story’s Eq. J. § 790. The rule is carried so far that money to be laid out in land, so fully becomes land, as not to be personal assets — to be subject to the curtesy of the husband — to pass as land by will — and not to pass as money by a general bequest to legatees. It has always struck me, if these principles of equity are well founded, then that whenever a testator directs his executor to sell land, and give the proceeds to any particular individual, that individual being in equity the owner of the land, he ought to be entitled to the beneficial interest of the land from the time his equitable interest accrues. A contrary doctrine sometimes works great hardship, and really defeats, in a measure, the intention of the testator. In this case it is manifest an immediate sale was contemplated, and yet was postponed for nearly two years. After waiting thus long upon the executor, suppose he had then refused to execute the trust; a resort to this court would have been necessary in such a case, and thus, for an indefinite period, the legatees would have been deprived of their rights. If these legatees might have elected to take the lands instead of the proceeds, and thus have entered at once upon the receipt of the rents and profits, why should not equity protect them in the enjoyment of these rents and profits during the period which it is necessary should elapse in securing the benefit of the land in the specific manner it is given by the will? The testator *194 gives them the proceeds of certain land. Equity says they may take the land itself; and looking upon the heir as trustee merely, will compel him to execute the trust hy conveying the title to the equitable owner. "Why not, then — 'When the legatees proceed, not to reduce the thing itself into possession, but to take the proceeds after sale— during this process of executing the trust, hold the heir as the trustee in receipt of the rents and profits ? In the one case, equity puts the equitable owner into possession because he is the beneficial owner; and if he is so, why is he not entitled to the rents and profits upon the same principle? As was said by the Chancellor, in Rogers v. Ross, 4 J. C. R. 404, “ the testator’s intention is the only subject of inquiry, and when it is sufficiently ascertained it must prevail and he carried into effect: and the court would never suffer that intention to be defeated for the want of a mere formal trustee of those profits. Whoever takes the land during the intermediate period, either as heir or devisee, takes it subject to the trust created by the will.” This language was not used in reference to the precise point we are considering, hut to an analogous question, which makes the language very apt and applicable.
I have not overlooked the fact, that this is a mere naked power, or the distinction attempted to he drawn where the devise is to the executor for the purposes of the trust, and where the law casts the title upon the heir. I can see no difference where the trustee is created hy the express appointment of the testator or hy operation of law. The circumstance may be a key to the intention of the testator; hut where that intention is otherwise signified, either by express words or by implication, it cannot override or defeat that intention.
The costs of the suit must first be deducted, and the balance distributed among the eight legatees named in the fifth clause of the will.